IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ROSEMARY TROWBRIDGE,            §
                                §
            Plaintiff,          §
                                §
VS.                             §    NO. 4:06-CV-221-A
                                §
LAW OFFICES OF MARK S.          §
STEWART & ASSOCIATES, P.C.,     §
AND MARK S. STEWART,            §
                                §
            Defendants.         §

MEMORANDUM OPINION
and
ORDER

   The court has concluded that the motion for entry of agreed

judgment filed by the parties in the above-captioned action on

October 30, 2006, should be granted by the signing and entry of

the agreed judgment the parties tendered with the motion, but

that the explanations provided, and actions taken, in this order

are appropriate and necessary by way of clarification of the

court's intent in signing the agreed judgment.

I.

Nature of this Litigation

   This action was instituted by a civil complaint filed March

30, 2006, by Rosemary Trowbridge, plaintiff, against Mark S.

Stewart ("Stewart") and Mark S. Stewart & Associates, P.C., as

defendants.  Plaintiff alleged that: (1) Stewart and his law firm

served as her attorneys in the pursuit by her of medical

negligence claims against various health care providers; (2) she,

through Stewart, settled her claims; (3) in early December 2005

Stewart and his law firm, acting as her attorneys, received the

check representing the settlement proceeds, forged her name to the check, and deposited the proceeds of the check into a fiduciary account Stewart maintained for deposit of funds belonging to his clients; (4) Stewart misappropriated those settlement proceeds by withdrawing them from the fiduciary account and using them for his personal purposes; (5) throughout the months of December 2005 and January and February 2006 plaintiff made inquiry of Stewart and his firm as to the status of her settlement proceeds, and was given misleading information by Stewart and his firm on each occasion; and (6) notwithstanding plaintiff's demands for payment to her of her settlement proceeds, Stewart and his law firm failed to pay the proceeds to her.  Plaintiff sought recovery of actual and punitive damages because of the "theft or otherwise intentional and unlawful conduct of" Stewart and his law firm.  Compl. at 4.

II.

Stewart's Bankruptcy

Rather than to respond by either admitting or denying the allegations of the complaint, Stewart and his law firm filed in early May 2006 a Suggestion of Bankruptcy urging that the action be dismissed because Stewart had filed for protection of the bankruptcy court in early September 2005.  The court declined to dismiss the action.  Thereafter, the trustee in Stewart's bankruptcy case filed a motion to intervene in this action, alleging, inter alia,

9.   The same day that the Trustee received notice
of the existence of this civil action, June 2, 2006,

2

the Trustee received evidence that Mark S. Stewart had misappropriated funds of his bankruptcy estate in the amount of $209,233.15 in violation of the Bankruptcy Court's Order (the **"Funds"**).

10.   Upon information and belief, the Trustee believes that Mark S. Stewart has used the Funds or a portion thereof to partially or fully satisfy Plaintiff's demands for her settlement proceeds.

11.   Based upon this information, the Trustee filed a Motion to Hold Debtor Mark Steven Stewart in Contempt of Court Order (the **"Motion for Contempt"**) with the Bankruptcy Court on June 5, 2006.

June 9, 2006, Mot. to Intervene at 3.   The court declined to

permit the intervention.[1]

### III.

#### Discovery

A significant amount of discovery was accomplished by plaintiff in this case.  Because of the relevance to issues presented to the court concerning Stewart's conduct, the court directed that all discovery material be filed with the papers in this action.  In addition, the court ordered Stewart to file with the papers in this action certain records pertaining to the fiduciary bank account into which, plaintiff alleges, Stewart put plaintiff's settlement proceeds and from which, she alleges, he then withdrew them for his personal use.

The information now on file with the court indicates that the factual allegations made by plaintiff in her complaint are true.  A deposit slip dated December 12, 2005, shows a "Trowbridge" deposit of $225,000.00 into the fiduciary account.  Defs.' App. filed June 23, 2006, at 72.  Thereafter, checks were drawn on that account for use by Stewart and his law firm, including several checks for thousands of dollars each payable to Stewart himself.  Id. at 38-52.

The material now before the court seems rather clearly to reflect that Stewart received in December 2005 a $225,000.00

---

[1]At the recommendation of the bankruptcy court, this court withdrew the automatic reference to the bankruptcy court of the motion the Trustee filed to hold Stewart in contempt of court by virtue of having misappropriated funds belonging to the bankruptcy estate.  That motion in contempt remains pending before this court as a separate action, case number 4:06-CV-442-A.

4

check in payment of the settlement of plaintiff's medical negligence claims, that he, or someone acting at his behest, signed plaintiff's name to the check and deposited it into the client-fiduciary bank account maintained by Stewart and his law firm,[2] and that Stewart then misappropriated plaintiff's settlement money for his own benefit.  The record also reflects that when plaintiff, or someone acting on her behalf, inquired of Stewart as to the whereabouts of her settlement money, Stewart in response made false representations concerning the status of the settlement funds.

Also disclosed by the record are the facts that on March 31, 2006, Stewart deposited to his client-fiduciary account a $209,233.15 check that belonged to his bankruptcy estate and that out of that misappropriated fund Stewart sent plaintiff a check in the amount of $168,750.00 in early April 2006, approximately a week after plaintiff instituted this action, representing to plaintiff that he was sending her everything to which she was entitled out of the $225,000.00 settlement amount.  Id. at 171.

When plaintiff's counsel took Stewart's oral deposition in June 2006 in an effort to obtain an explanation for Stewart's handling of plaintiff's settlement money, Stewart answered each question by saying:  "On the advice of counsel, I have been

---

[2]The account name shows that the account is what commonly is called an "IOLTA Account."

instructed not to answer any questions.  I'm invoking my Fifth

Amendment rights."[3]  Notice of Defs.' Compliance, dep. at 4.

IV.

<u>The Settlement Agreement Between
Plaintiff, on the One Hand, and Stewart and
His Law Firm, on the Other</u>

On August 24, 2006, the parties filed an agreed motion for

continuance of the trial setting and pretrial deadlines in this

action on the ground that they had reached a settlement that

required bankruptcy court approval.  On August 24 the court

ordered the parties to file by August 28, with an appropriate

cover document, copies of all papers they proposed to use in

order to complete the settlement, including any settlement

agreement, proposed judgment, and any motion filed or to be filed

with the bankruptcy court requesting approval of the settlement.

The parties jointly filed on August 28 certain of the papers

proposed to be used in the settlement, but failed to comply with

the directive of the August 24 order that they file a copy of the

settlement agreement itself.  Instead, the parties requested the

---

[3]In the answer Stewart and his firm late-filed with leave of
court, Stewart responded to plaintiff's allegations against him by
saying that he "asserts his rights under the Fifth Amendment to the
United States Constitution to refuse to answer this paragraph."
Answer at 2-6.  When the court instructed Stewart to provide a full
explanation, he provided a partial explanation, and then said
"[b]eyond that, Defendant Stewart must respectfully assert his right
under the Fifth Amendment to the United States Constitution to refuse
to further answer this question."  Resp. filed June 23, 2006, at 7.
When questioned on October 10, 2006, at the hearing before the
bankruptcy court on Stewart's motion to gain approval of his
compromise with plaintiff, Stewart answered every question posed to
him with: "On advice of counsel, I've been instructed not to answer
any questions, and I invoke my rights under the Fifth Amendment."
Tr. of Oct. 10, 2006, Hr'g in No. 05-49131-DML-11 at 39-41.

6

court to reconsider that directive, pointing out that they had agreed that the settlement agreement itself would remain confidential.  By order of August 28 the court denied the motion for reconsideration, but did permit the parties to file the settlement agreement under seal.

On August 29 the parties filed under seal an unsigned document titled "Confidential Settlement Agreement and Release." By order signed September 5, 2006, the court made known to the parties that the court did not believe that the settlement document should remain under seal, and explained why the court had reached that conclusion.  The September 5 order itself was placed under seal by the court, subject to unsealing by subsequent order.[4]

As the court explained in the September 5 order, the court had concerns relative to certain provisions in the proposed settlement agreement:

(1)  One of the provisions is that plaintiff agrees to return to Stewart and his law firm all documents, and all copies thereof, provided by them to plaintiff in the discovery in this action.  That provision is impossible of performance because pursuant to order of this court all discovery material developed during the prosecution of this action has been filed with the papers in this action, and now is part of the public record.

---

[4]The court has concluded that the September 5 order as well as the proposed settlement agreement should be unsealed.  The reasons for the unsealing will be discussed at a later point in this memorandum opinion and order.

(2)   The proposed agreement obligates plaintiff to sign and deliver to Stewart an affidavit of non-prosecution in a form substantially the same as one attached to the proposed agreement as an exhibit.   The attached exhibit, titled "Affidavit of Non-Prosecution," which was prepared for the signature of plaintiff before a notary public, contains, <u>inter alia</u>, the following language:

> It is my understanding that this incident is being investigated by the Tarrant County District Attorney's Office.
>
> Due to the fact that the differences between Mark S. Stewart and me have now been settled, I REQUEST THAT ANY CRIMINAL CHARGES NOW PENDING BE DISMISSED, OR IF NO CRIMINAL CHARGES HAVE BEEN FILED AS OF TODAY'S DATE, THAT [sic] I REQUEST NO CHARGES BE FILED AGAINST MARK S. STEWART.  I also request that the State Bar of Texas refrain from barring or suspending Mark S. Stewart from the practice of law as a result of any grievance I have filed against him.

Settlement Agreement filed Aug. 29, 2006, Ex. B, 1st p.  The court expressed concern in the September 5 order that such an agreement could well be against public policy and could raise ethical questions.  In the September 5 order the court noted that never before has the court been confronted with a circumstance where an attorney authorized to practice by the State Bar of Texas and by this court has asked this court to approve an agreed judgment pursuant to an understanding between the attorney and his opponent that obligates the opponent to intervene on the attorney's behalf in criminal proceedings against the attorney and to take affirmative action to help relieve the attorney of the consequences of his unethical, if not criminal, conduct.  In

8

the September 5 order the court also noted a risk that plaintiff and Stewart each would commit a criminal act if they were to enter into the proposed settlement agreement and plaintiff were to sign the Affidavit of Non-Prosecution and do the things it contemplates that she will do.

(3)   The proposed agreement contemplates that as a part of the settlement the court would sign an agreed judgment in the form of a document attached as an exhibit.   The proposed agreed judgment recites an adjudication that "pursuant to 11 U.S.C. § 523, and all other applicable provisions of the bankruptcy code, this judgment is non-dischargeable in this, or any, bankruptcy of the Defendants and/or their successors." Settlement Agreement filed Aug. 29, 2006, Ex. A at 4th p.   Non-dischargeability language is found in the settlement agreement itself, id. at 7, ¶ 8(a), and in the motion filed in the bankruptcy court for approval of the settlement agreement, Joint Notice of Compliance, Ex. 3 at 3, ¶ 4.   The court expressed in the September 5 order reluctance to sign an order containing generally worded non-dischargeability language, noting that the documentation should be specific as to the basis for non-dischargeability, presumably the provisions of 11 U.S.C. § 523(a)(4)[5] (providing that a discharge under title 11 does not discharge an individual debtor from any debt "for fraud or

_____

[5]The September 5 order incorrectly referred to § 523(a)(6) instead of 523(a)(4).

defalcation while acting in a fiduciary capacity, embezzlement, or larceny").[6]

The proposed settlement agreement was presented to the bankruptcy court for approval at a hearing held October 10, 2006. The bankruptcy judge announced on the record that he was approving the settlement with the requirement that "prior to the payment of the $15,000 under the settlement and, therefore, presumably prior to the entry of the judgment, Mr. Stewart is to prepare, either on behalf of [his law firm] or himself, a proposed cash flow and budget that will reflect how he anticipates paying this debt and that he's assuming under this compromis[e] settlement, as well as satisfying Themis and his other creditors."[7]  Tr. of Oct. 10, 2006, Hr'g in No. 05-49131-DML-11 at 51.

A consideration of the bankruptcy court in deciding to approve the settlement is that such an approval might facilitate the continuation by Stewart and his law firm of the practice of law, thereby generating income that might be available to pay to Stewart's creditors, including the Internal Revenue Service.  Id. at 36, 51.  The bankruptcy judge chose not to address the concerns of this court relative to the proposed settlement

---

[6]The court ended the September 5 order by stating that "[i]f the court's concerns persist when, and if, the matter of settlement is presented to this court for entry of an agreed order or judgment, the court will address the concerns again at that time."  Sept. 5, 2006, Order at 5.

[7]This court is assuming that the requirement imposed by the bankruptcy court has been satisfied.

agreement, as discussed above, except to express the thought that
the non-dischargeability language of the agreement was not of
concern to the bankruptcy court.  Id. at 48-49.  The participants
in the bankruptcy hearing appear to have assumed that this court
again would evaluate the propriety of the settlement agreement
once the matter came back to this court after bankruptcy court
approval.  Id. at 10, 23, 48.

On October 24, 2006, the bankruptcy judge signed an order
granting the motion to compromise plaintiff's claims, subject to
the same requirement expressed at the October 10 hearing.

V.

<u>The Parties Have Done Nothing to
Allay the Court's Concerns About
Provisions of the Settlement Agreement</u>

At the hearing before the bankruptcy court on October 10,
2006, on the motion of Stewart seeking approval of his compromise
with plaintiff, David Fielding, his attorney, had the following
exchange with the bankruptcy judge during the course of giving
testimony in support of the motion:

THE COURT:  Is Judge McBryde going to pass on
the settlement as to approval or disapproval of the
settlement?

THE WITNESS:  The idea has been that we
present it to you first, and if --

THE COURT:  And if I approve it, then it will
go to him.

THE WITNESS:  Then our game plan was, if you
approve it we were going to file a motion and order
with the Court to dismiss the lawsuit.  He has
indicated he wants to know more detail, and so we've
given that to him.  And I think we're going to need to

11

go back to him and satisfy him on the issues that he
has raised.

Tr. of Oct. 10, 2006, Hr'g in No. 05-49131-DML-11 at 10.

Since obtaining the bankruptcy court's approval on October
10, neither Stewart, his attorney, his law firm, nor plaintiff
has done anything to satisfy this court on the issues that this
court raised in the September 5, 2006, order.  The response to
the September 5 order Stewart and his firm filed on September 11,
2006, did not address the court's concerns; rather, Stewart and
his firm focused in their response on the issue of whether the
settlement agreement should be kept under seal.

Normally, the court would not concern itself with the terms
of a settlement agreement between mentally competent adults in a
case pending before the court.  However, in this case the court
has been asked to participate in the implementation of the
settlement agreement by the signing and entry of an agreed
judgment contemplated by the agreement.  Consequently, the court
considers appropriate the clarifications provided in this
memorandum opinion of the court's intent in signing the agreed
judgment.  The court is assuming that the document that evidences
the settlement between the parties is worded the same as the
proposed settlement agreement filed August 29.  The motion for
entry of agreed judgment filed October 30 and the proposed agreed
judgment tendered with it appear to be worded exactly the same as
the proposed versions of those items that were attached to the
proposed settlement agreement filed August 29.

12

The court does not intend by the signing of the tendered agreed judgment to approve in any respect the features of the settlement agreement that obligates plaintiff (1) to return to Stewart and his law firm all documents, and all copies thereof, provided by them to plaintiff in the discovery in this action and (2) to sign and deliver the "Affidavit of Non-Prosecution" that is referred to in the settlement agreement.  The return-of-documents feature obviously is impossible of performance because the documents on file with the court cannot be returned by plaintiff to Stewart and his law firm.  The court questions whether the requirement in the agreement that plaintiff sign and deliver to Stewart and his law firm an Affidavit of Non-Prosecution is legally enforceable.  Section 36.05(a)(5) of the Texas Penal Code defines as a criminal offense the agreement of a person, with the intent to influence the witness, to confer any benefit on a witness or prospective witness in an official proceeding to abstain from, discontinue, or delay the prosecution of another; and, section 36.05(b) defines as a criminal offense the agreement of a witness or perspective witness in an official proceeding to knowingly accept, or agree to accept, any benefit on the representation or understanding that he will abstain from, discontinue, or delay the prosecution of another.  Thus, the appearance is that Stewart and plaintiff both would commit a criminal offense by an agreement that plaintiff would request that any criminal charges now pending against Stewart be

dismissed, or, if no criminal charges have been filed, that no criminal charges be filed against Stewart.

The proposed Affidavit of Non-Prosecution has added language that reads as follows:

> I further state that I have been informed by TIM MOORE, Attorney for Mark S. Stewart, that Section 36.05 of the Texas Penal Code makes it a VIOLATION OF THE LAW, punishable by a fine not to exceed $10,000.00 and confinement in a state jail for a term not to exceed two years or both such fine and confinement, to solicit, accept or agree to accept any benefit in consideration of abstaining from, discontinuing or delaying a prosecution of another after criminal proceedings have been instituted. I have read the attached copy of the law and acknowledge the same. I state that neither I, nor TIM MOORE, nor MARK S. STEWART, or any other party representing or claiming to represent MARK S. STEWART, have violated the said Section 36.05. I further state that I have been advised that if I have any questions concerning this affidavit or the effect of my signing the same, that I should seek the advice of a private attorney and/or a representative of the Tarrant County District Attorney's Office. As a result of all the foregoing, I hereby state that I understand this Affidavit and that I sign the same knowingly, freely and voluntarily, and with full awareness that should this Affidavit be honored and this complaint dismissed, that this criminal case will not be refiled."

Settlement Agreement filed Aug. 29, 2006, Ex. B at 1st & 2d pp. However, there has been no disclosure to the court of any fact that would cause the non-prosecution promise not to be unlawful. Section 36.05(c) provides that it is a defense to prosecution based on an agreement to abstain from, discontinue, or delay the prosecution of another if the benefit that was received was:

> (1)  reasonable restitution for damages suffered by the complaining witness as a result of the offense; and

      (2)   a result of an agreement negotiated with the
assistance or acquiescence of an attorney for the state
who represented the state in the case.

Tex. Penal Code Ann. § 36.05(c) (Vernon 2003).  While one might
reasonably argue that the benefit plaintiff received from Stewart
was reasonable restitution, the court has not been provided any
information to indicate that the benefit received was "a result
of an agreement negotiated with the assistance or acquiescence of
an attorney for the state who represented the state in the case."
Presumably, bearing in mind the concerns the court expressed to
the parties, the parties would have made known to the court that
such a requirement was satisfied, if it was.

     Even if the non-prosecution part of the agreement were put
out of consideration, the court nevertheless would have concern
with the provision in the settlement agreement that plaintiff
"request[s] that the State Bar of Texas refrain from barring or
suspending Mark S. Stewart from the practice of law as a result
of any grievance I have filed against him."  Settlement Agreement
filed Aug. 29, 2006, Ex. B at 1st p.  The court is unaware of any
authority that would make appropriate the conduct of an attorney
licensed in Texas in obtaining an agreement such as that in
exchange for a payment to the grievant.  While the court has not
found authority one way or the other on the subject, the court is
inclined to believe that such an agreement would be against
public policy.  Such an agreement certainly raises another
question about the ethics of Stewart.

As to the non-dischargeability language contained in the agreed judgment, the court is hereby making known by this order that the reason for the adjudication of non-dischargeability is that the indebtedness represented by the agreed judgment represents a debt owed by Stewart and his law firm to plaintiff "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," as contemplated by 11 U.S.C. § 523(a)(4).

VI.

## The Court is Unsealing the Proposed Settlement Agreement and September 5 Order

In the September 5 order the court made known the court's belief that neither the settlement agreement nor the September 5 order should remain under seal, citing United States v. Raybould, 130 F. Supp. 2d 829, 831-33 (N.D. Tex. 2000), for citations to the authorities stating the rule that there is a very strong presumption in favor of public access to all parts of judicial proceedings.  The court invited the parties to direct the court's attention to any legal argument or authority on the subject of unsealing.  On September 11, 2006, Stewart and his law firm responded, objecting to the unsealing, but not citing any authority in support of ongoing sealing of the documents.[8]  In

---

[8]Stewart and his law firm referred to Rule 408 of the Federal Rules of Evidence.  Resp. filed Sept. 11, 2006, at 3, ¶ 9.  However, that rule is a rule of evidence, which has no relevance to the issue of non-disclosure of court records.

the response Stewart and his firm argued that Raybould was not persuasive inasmuch as it was a criminal case.

The court has concluded that an unsealing should be ordered.

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents . . . ." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). See also Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1177-79 (6th Cir. 1983). The right to inspect and copy judicial records is not absolute, and the court has supervisory power over its own records and files. Nixon, 435 U.S. at 598. Access has been denied where the court files could become a vehicle for improper purposes, such as disclosure of the gory details of a divorce case. Id. However, simply showing that the information could, or would, harm the reputation of a litigant "is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." Brown & Williamson, 710 F.2d at 1179. The principles compelling access to records of criminal proceedings apply as well to civil proceedings. Id. at 1178-79. The desire to shield prejudicial information contained in judicial records from the public "cannot be accommodated by courts without seriously undermining the tradition of an open judicial system." Id. at 1180.

While access to judicial records is not absolute, a district court's discretion to seal the record of a proceeding "'is to be exercised charily.'" S.E.C. v. Van Waeyenberghe, 990 F.2d 845,

17

848 (5th Cir. 1993) (quoting <u>Federal Savs. & Loan Ins. Corp. v.</u>
<u>Blain</u>, 808 F.2d 395, 399 (5th Cir. 1987)).  Public access to
judicial records "'serves to promote trustworthiness of the
judicial process, to curb judicial abuses, and to provide the
public with a more complete understanding of the judicial system,
including a better perception of its fairness.'"  <u>Id.</u> at 849
(quoting <u>Littlejohn v. BIC Corp.</u>, 851 F.2d 673, 678 (3d Cir.
1988)).

There is a particularly compelling reason for a public
disclosure in the instant action.  The complaint by which this
action was instituted discloses that an officer of this court,
who is licensed to practice law by the State of Texas, has
engaged in conduct that, if the allegations are accepted as true,
probably is criminal, and certainly is unethical.  The
allegations of the Trustee's plea in intervention, if true,
disclose that Stewart engaged in dishonest, if not criminal,
conduct related to his bankruptcy case.  The public has a vital
interest in having complete knowledge of the handling, and basis
for disposition, of a case such as this.  Of legitimate interest
to the public would be an attempt by Stewart to gain, in exchange
for a monetary payment to his victim/client, assistance by his
victim/client in avoiding criminal prosecution and disciplinary
action by the state agency that regulates the conduct of
attorneys.

The court has concluded that the tradition of public access
to judicial documents prevails in this case over any interest the

18

parties might have in non-disclosure of the proposed settlement agreement and September 5 order.[9]

VII.

Order

For the reasons given, and with the qualifications and explanations stated,

The court ORDERS that the Motion for Entry of Agreed Judgment filed October 30, 2006, be, and is hereby, granted.

The court further ORDERS that the settlement agreement filed in this action on August 29, 2006, and the September 5, 2006, order in this action be, and are hereby, unsealed.

SIGNED December 21, 2006.


_____/s/ John McBryde_____
JOHN McBRYDE
United States District Judge

---

[9]The court recognizes that after Stewart and his law firm failed to comply with the directive of the August 24, 2006, order that the settlement agreement be filed, the court rendered another order on August 28 authorizing the parties to file the settlement agreement under seal.  However, the series of events, including the contents of the September 5 order, make clear that the parties were, or should have been, aware that there was a possibility that there would be an unsealing.